IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

KURT REIGHARD,                            )
     Petitioner,                         )
                                         )
                                         )
    v.                                    )            Case No. 1:11-CR-408 (GBL)
                                         )
UNITED STATES OF AMERICA,                 )
     Respondent.                         )
                                         )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Petitioner Kurt Reighard's Motion to Vacate, Set

Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 56.) This Motion concerns

Petitioner's claims of ineffective assistance of counsel and the alleged unjust imposition of

supervised release. There are two issues before the Court. The first issue before the Court is

whether Petitioner is entitled to relief under § 2255 when Petitioner alleges he received

ineffective assistance of counsel during each of three stages of litigation: (1) during the

negotiation period leading up to the plea agreement; (2) during the preparation period prior to

sentencing; and (3) during the post-conviction period when Petitioner insisted on filing an

appeal. The second issue is whether the imposition of supervised release is a violation of either

the rule of lenity or the Fifth Amendment due to a conflict between 18 U.S.C. § 3582 and 21

U.S.C. § 841.

This Court holds that Petitioner received constitutionally effective assistance because

Defense Counsel reasonably presented all of Petitioner's arguments to the Court, and because

even if Defense Counsel's performance fell below a reasonable standard, Petitioner has not

established he was prejudiced as a result. This Court next finds that Petitioner's claim for unjust imposition of supervised release is both procedurally barred and without valid legal support. Therefore, the Court DENIES Petitioner's Motion to Vacate, Set Aside, or Correct Sentence. (Doc. 56.)

## I.  BACKGROUND

On October 3, 2011, Petitioner appeared before this Court with court-appointed Defense Counsel, Keva J. McDonald, and pled guilty to a one-count Criminal Information charging him with conspiracy to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Docs. 29, 30.) According to the Statement of Facts that Petitioner signed and to which he attested were "true and accurate," Petitioner, age 42 at the time, engaged in a conspiracy to distribute oxycodone from around June 2007 through July 2011. (Doc. 33.) Petitioner's co-conspirators, including his wife, Brooke Reighard, then age 20, and Marc Harding, created fraudulent prescriptions bearing genuine physician names and Drug Enforcement Administration numbers. (*Id.* ¶ 2.) Petitioner and his co-conspirators filled the fraudulent prescriptions at various pharmacies throughout the Eastern District of Virginia, and distributed a portion of the pills obtained. (*Id.*) Throughout the conspiracy, Petitioner was either personally involved in the distribution, or it was reasonably foreseeable to him that his co-conspirators were distributing. (*Id.* ¶ 9.)

> In the Plea Agreement, Petitioner attested that:
>
> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal information. Further, I fully understand all rights with respect to Title 18, United States Code, Section 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case. I have read the plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it.

(Doc. 32, at 14.) In so signing, Petitioner attested *inter alia* that he "will plead guilty because [he] is in fact guilty of the charged offense" (*id.* ¶ 3); "is satisfied that [his] attorney has rendered effective assistance" (*id.* ¶ 4); and "knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement." (*Id.* ¶ 6.) Additionally, Petitioner attested that he "understands that this supervised release term is in addition to any prison term the defendant may receive." (*Id.* ¶ 1.)

Further, during Petitioner's Plea Hearing, the Court confirmed Petitioner's assent to, and understanding of, several of the provisions within the Agreement (*see generally* Plea Hr'g Tr.) and the content of the Statement of Facts. (*Id.* at 23:1.) Petitioner told the Court, under oath, that he decided voluntarily to enter into the Plea Agreement (*id.* at 2:19–22) and that he had received effective assistance of counsel. (*Id.* at 4:5.) Petitioner specifically acknowledged, at two separate points during the hearing, his involvement in the conspiracy between June 2007 and July 2011. (Plea Hr'g Tr. at 6:5, 21:21.) The Court informed Petitioner that "[t]he maximum penalties for this offense are a term of 20 years imprisonment, a fine of $1 million, full restitution . . . and at least three years of supervised release." (*Id.* at 7:23–8:6.) The Court then asked if Petitioner understood the charge he was pleading guilty to and Petitioner responded "Yes, Your Honor." (*Id.* at 8:7.) The Court asked Petitioner if he understood that his sentence, in a "worst case scenario," could be 151 to 188 months and Petitioner said he understood. (*Id.* at 10:1–5.) The Court also informed Petitioner that receiving a sentence higher than the "worst case scenario" would not be a basis for withdrawing his guilty plea and Petitioner again confirmed his

3

understanding. (*Id.* at 10:22–11:4.) Further, the Court confirmed that Petitioner understood he was waiving his right to appeal:

> THE COURT: Let's go over to page six, paragraph five. Paragraph six [sic] talks about waiver of appeal, and I want to explain to you what an appeal is. Ordinarily, you'd have the right to have three judges of the Court of Appeals review the sentence that I give you [to decide if] I made some mistake in applying the Sentencing Guidelines law or the law to your case. However, by signing this written plea agreement, you're giving away your right to [the review of] the sentence that I give you as long as I don't exceed the maximum punishment. Do you understand that?
>
> [PETITIONER]: Yes, Your Honor.

(*Id.* at 11:7–20.) The Court entered Judgment against Petitioner on January 31, 2012 and imposed a significantly-below-guideline sentence of forty-eight months of imprisonment and three years of supervised release. (Doc. 45.)

On January 17, 2013, Petitioner, proceeding *pro se*, filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 in the Eastern District of Virginia. (Doc. 49.) Petitioner also filed a Motion for Discovery Production of Documents (Doc. 52) on January 29, 2013 and a Motion to Waive Some Documents Requested (Doc. 53) on January 31, 2013. Petitioner filed an Amended Motion to Vacate on May 21, 2013. (Doc. 56.) The Government filed its Opposition on December 11, 2013. (Doc. 70.) Petitioner did not file a reply to the Government's Opposition.

## II.    STANDARD OF REVIEW

A motion under 28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the legality of a federal sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. A sentence is "otherwise subject to collateral attack" only

4

when there is an error constituting a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)). A petitioner bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. *Hall v. United States*, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

A petitioner may not substitute a motion pursuant to § 2255 for the "usual and customary method" of the direct appeal to correct errors. *United States v. Allgood*, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). For issues that could have been brought on appeal but were not, "the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1992). With limited exceptions, a petitioner's procedural default of a claim prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal. *Id.* at 492. The "cause and prejudice standard" required for collateral relief is significantly more difficult to meet than the direct appeal "plain error standard" because once a defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." *United States v. Frady*, 456 U.S. 152, 164–66 (1982).

A petitioner must show a cause "excusing" his procedural default such as something "external to the defense, such as the novelty of the claim, or a denial of effective assistance of counsel." *Mikalajunas*, 186 F.3d at 493; *Frady*, 456 U.S. at 168. In order to show actual prejudice, a defendant must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). The

5

court does not need to address cause unless the defendant establishes actual prejudice. *Id.* at 168. Further, errors of guideline interpretation or application ordinarily fall short of a miscarriage of justice. *Mikalajunas*, 186 F.3d at 496.

A defendant may raise collateral claims of ineffective assistance of counsel under § 2255. *See Mikalajunas*, 186 F.3d at 493; *United States v. Martinez*, 136 F.3d 972, 979 (4th Cir. 1998). Collateral claims of ineffective assistance of counsel are evaluated by the rigorous two-prong test established by the Supreme Court in *Strickland v. Washington*, 446 U.S. 668 (1984). A person must show (1) that his attorney's performance "fell below an objective standard of reasonableness" and that (2) he experienced prejudice as a result, meaning that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012) (citing *Strickland*, 446 U.S. at 687–88). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

The "objective standard of reasonableness" prong addresses counsel's professional competence and requires that a petitioner demonstrate, in light of all the circumstances at the time and without the "distorting effects of hindsight," that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687–90. In *Strickland*, the Supreme Court suggested the American Bar Association's Criminal Justice Standards, or other such guides, may be considered by the Court for standards of reasonableness. *Id.* at 688–89. The Court recognized that "[e]ven the best criminal defense attorneys [will] not defend a particular client in the same way" and therefore there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Satisfying the prejudice prong of *Strickland* in a plea agreement case requires a petitioner to establish with reasonable probability that "but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Strickland*, 446 U.S. at 694.

Section 2255 directs that:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). However, an evidentiary hearing is "not necessary when a 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and the records of the case." *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003).

Statements made during a Rule 11 colloquy are especially important in determining if an evidentiary hearing is required.

> [A] defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. Indeed, because they do carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated – permit[ting] quick disposition of baseless collateral attacks.

7

*Ashlock v. United States*, No. 4:12-cv-133, 2013 WL 5275908, at *4–5 (E.D. Va. Sept. 12, 2013) (citing *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2004) (internal quotation marks and citations omitted)). Essentially, absent extraordinary circumstances, statements made during a Rule 11 colloquy are *per se* credible, making an evidentiary hearing unnecessary to resolve issues presented in a petitioner's § 2255 motion that are contrary to statements made during a Rule 11 colloquy.

## III.    ANALYSIS

The Court denies Petitioner's § 2255 Motion on all grounds. Petitioner argues that he received ineffective assistance of counsel during three stages of the litigation: (1) during the negotiation period leading up to the plea agreement; (2) during the preparation period before sentencing; and (3) during the post-conviction period when Petitioner wanted to appeal. However, Petitioner has failed to show "cause and actual prejudice" as required to establish his Defense Attorney provided constitutionally ineffective assistance and thus his arguments fail. Petitioner also argues the Court's imposition of supervised release following his prison term is unjust, but Petitioner's argument is procedurally barred and lacks valid legal support. As such, the Court Denies Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence on all claims.

### A.  Ineffective Assistance of Counsel

The Court denies Petitioner's ineffective assistance of counsel claims because he has not met his burden by the preponderance of the evidence under the two-prong test set forth in *Strickland*. Under *Strickland*, Petitioner must show that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Petitioner must show that counsel's performance "fell below an objective standard of

8

reasonableness." *Id.* at 688. The prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. at 59. Thus, Petitioner must show that "there is a reasonable probability that but for counsel's constitutional errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Petitioner alleges Defense Counsel provided ineffective assistance during three stages of litigation: (1) during the negotiation period leading up to the plea agreement; (2) during the preparation period before sentencing; and (3) during the post-conviction period when Petitioner wanted to appeal. However, Petitioner's allegations are directly refuted by the record, by his own personal statements, and further by Defense Counsel's sworn affidavit.

1. Plea Agreement

Petitioner alleges Defense Counsel provided ineffective assistance by: (1) failing to communicate regularly with him (Doc. 56, at 5, 9); (2) failing to discuss the Plea Agreement with him prior to sentencing (*id.* at 12) and "directing" him to sign the plea agreement (*id.* at 9, 11); (3) failing to properly investigate his case (*id.* at 5, 9); and (4) failing to get him released on bail. (*Id.* at 5, 7.)

First, Petitioner alleges that Defense Counsel failed to communicate with him and that she was unavailable whenever he attempted to contact her. (Doc. 56, at 2–4.) However, the Court finds that Defense Counsel both met with and appeared on behalf of Petitioner regularly and provided constitutionally effective assistance. Defense Counsel was appointed to Petitioner's case on August 1, 2011, and met with Petitioner the next day, August 2, 2011, to discuss her role as an attorney and Petitioner's case. (Doc. 70-1, ¶ 6.) Defense Counsel appeared on behalf of Petitioner at his August 2, 2011 Preliminary Hearing and Detention Hearing (Doc. 20) as well as

9

his October 3, 2011, Plea Hearing. (Doc. 31.) Both Petitioner and Defense Counsel attest that they also met on several other occasions. (Doc. 56, at 2; Doc. 70-1, ¶ 12.)

Second, Petitioner alleges that he unknowingly and unwillingly entered into the Plea Agreement because Defense Counsel told him to "sign a plea for guilty regardless whether [sic] he was guilty or not, or that he would get from 20 years to a life sentence [sic]," and that Defense Counsel failed to fully explain the Plea Agreement prior to sentencing. (Doc. 56, at 12.) However, the record shows that Petitioner voluntarily decided to enter the Plea Agreement. As outlined above, upon signing the Plea Agreement, Petitioner attested to his understanding of the terms of the agreement, his rights, and his satisfaction with Defense Counsel's assistance. (*See generally* Doc. 32.) Petitioner's statements made under oath during his Plea Hearing further support that he voluntarily entered into the Plea Agreement (Plea Hr'g Tr. at 2:19–22) and that he received effective assistance of counsel. (*Id.* at 4:5.) Petitioner confirmed his understanding of the maximum penalties authorized for his crime, specifically that he could be sentenced to twenty years imprisonment followed by three years of supervised release. (*Id.* at 7:23–8:24.) The Court explicitly addressed several of the Plea Agreement provisions and also advised Petitioner that he was agreeing to the written Plea Agreement in its entirety. (*Id.* at 7:4–13) ("[t]he whole agreement is important and [is] what [Petitioner] and the [G]overnment agreed to do.") The Court finds that Petitioner's claim that he did not knowingly and willingly enter into the plea agreement is in direct contradiction with the record and thus that Petitioner's claim is without merit.

Third, Petitioner claims that Defense Counsel failed to properly investigate his case because she should have "used a private investigator" and "obtain[ed] an affidavit from his wife" to verify the time frame and "prov[e] that he had no knowledge of any 'conspiracy' from 2007-

10

2010." (Doc. 56, at 7, 9.) Petitioner's bare allegation that Defense Counsel did not properly investigate his case is not supported by the record. Instead, Petitioner's own attestations and statements contradict his claim that he was unaware of a conspiracy prior to 2011. Petitioner attested to the truth and accuracy of the fact that "[b]eginning in or about June 2007, and continuing through in or about July 2011 . . . [Petitioner] did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others." (Doc. 33, ¶ 1.) Petitioner also acknowledged his involvement in the conspiracy from June 2007 to July 2011 at two separate points while under oath during his Plea Hearing. (*Plea Tr. Hr'g* at 6:5, 21:21.) Further, according to Defense Counsel's affidavit, she contacted counsel for Brooke Reighard about getting a statement in support of Petitioner, but was informed that Brooke Reighard would not testify on his behalf. (Doc. 70-1, ¶ 18.) As such, the Court does not find Defense Counsel failed to properly investigate Petitioner's case.

Fourth, Petitioner claims Defense Counsel refused to attempt to have him released on bail. (Doc. 56, at 5, 7.) Defense Counsel represented Petitioner at his August 2, 2011 Detention Hearing. (Doc. 22.) Defense Counsel actively argued for his release and cross examined Government witnesses. (Docs. 22, 23.) Even so, the Court found "probable cause to believe that the defendant ha[d] committed an offense" and that "no condition w[ould] reasonably assure the defendant's appearance and the safety of the community." (Docs. 22, 23.) Following the Detention Order, Defense Counsel filed a Motion to Reconsider Bond. (Doc. 24.) Defense Counsel asserts that upon learning she had improperly filed the Motion to Reconsider Bond, she visited with Petitioner to discuss refiling. (Doc. 70-1, ¶ 8.) Defense Counsel asserts that due to the low likelihood of success on the Motion, she and Petitioner agreed to withdraw the Motion

11

and not to refile. (*Id.*) Contrarily, Petitioner claims that Defense Counsel refused to try to get him out on bail. (Doc. 56, at 5, 7.)

Even assuming all of Petitioner's allegations are true, Petitioner has not established with "reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. Petitioner was provided, in writing, all of the information he claims Defense Counsel failed to communicate to him. Petitioner signed the Plea Agreement specifically acknowledging that he faced a maximum penalty of twenty years of imprisonment and three years of supervised release, and that a term of supervised release was in addition to any prison term he might receive. (Doc. 32.) Petitioner also acknowledged that he pled guilty because he was guilty, based on the facts set forth in the Statement of Facts. (*Id.*) Petitioner did not make any objections or express reservations when he accepted the Plea Agreement and incorporated Statement of Facts. (Doc. 75.)

Additionally, Petitioner admitted incriminating facts to the assigned Probation Officer in an interview. (Doc. 38, ¶ 63.) In his written statement, Petitioner attested that "[f]rom about June 2007 to July 2011, I supported and worked or arranged with other people to distribute oxycodone;" that he "was only personally involved in the conspiracy from the end of 2010 to the beginning and middle of 2011;" and that "[i]t was reasonably foreseeable to [Petitioner] that [his] co-conspirators distributed . . . oxycodone." (*Id.*) Because Petitioner admitted to facts he now contests, and because he attested to his understanding of the provisions within the Plea Agreement, this Court does not find that the outcome of the case would be different *even if* Defense Counsel's assistance had been below a reasonable standard.

Further, even if it were true that Defense Counsel refused to contact Petitioner's wife, Petitioner has not shown he suffered any prejudice as a result. Brooke Reighard's theory of the

case, as evidenced by the record in 1:11-CR-409, paints a picture of the Reighard marriage far different than that described by Petitioner. Brooke Reighard claims that Petitioner began molesting and abusing her as young as age 14. She claims that she was only involved in the conspiracy out of her fear of Petitioner. As such, testifying on behalf of Petitioner would directly contradict her own theory of the case. Therefore, regardless of whether Defense Counsel contacted Brooke Reighard, the Court finds it unlikely Brooke Reighard's testimony would have changed the outcome of the case.

Lastly, even though it is unclear from the record why a second Motion for Bond was not filed, Petitioner has failed to put forth any evidence that he *would have received* bond had Defense Counsel refiled. Based on the information presented to the Court at his bond hearing, the Court determined there was reason enough to detain Petitioner in order to secure his appearance in Court and to ensure the safety of the community. (Doc. 22.) Defense Counsel attests that success on the bond motion was unlikely. (Doc. 70-1, ¶ 8.) Without more, Petitioner's speculative claim that he would not have accepted a Plea Agreement if he had been released from custody is not "sufficient to undermine confidence in the outcome." *Strickland*, 446 U.S. at 694.

Therefore, the Court denies the Motion because Petitioner has failed to satisfy *Strickland* regarding Defense Counsel's representation prior to the Plea Agreement.

2. Sentencing

Petitioner argues that Defense Counsel provided ineffective assistance by failing to address three issues relating to sentencing raised by Petitioner: (1) that he was not a part of the conspiracy until 2011; (2) that subsequently he should not have two criminal history points assessed for committing a crime while on probation; and (3) that he was not a "leader" in the

13

conspiracy. (*See* Doc. 56, at 5–12.) Importantly, Petitioner is not denying he was involved in a conspiracy and that he sold oxycodone – he only argues that he was involved for less time and played a smaller role than what he was convicted for. (*Id.*) Petitioner also alleges Defense Counsel failed to provide the Court with evidence supporting his request for a lower-than-guideline sentence. (*Id.* at 5–7, 9) Petitioner's allegations are simply not supported by the record. Rather, Defense Counsel raised each of Petitioner's arguments regarding his involvement and role in the conspiracy in the objections to the Presentence Investigation Report ("PSR") (Doc. 38), in the Position on Sentencing (Doc. 40), and during oral arguments at the Sentencing Hearing. (Doc. 75.)

First, Defense Counsel filed objections to the PSR. Defense Counsel successfully argued against the PSR's characterization of Petitioner as an organizer in the conspiracy. (Doc. 38, at 33.) As a result, the probation officer revised the PSR and removed the four-level increase for holding an aggravating role, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1. (*Id.*) Additionally, Defense Counsel advocated for a "minor participant" two-level reduction pursuant to the U.S.S.G. § 3B1.2(b). (*Id.*) The probation officer rejected the minor participant argument stating, "[t]he fact that he may have been involved with the conspiracy for a shorter period of time than other criminal participants does not make him any less culpable." (Doc. 38, at 33.) Relatedly, Defense Counsel also filed an objection to the assessment of criminal history points attributed for committing the offense while on probation. (*Id.*) She argued that because Petitioner did not enter the conspiracy until late 2010, he was no longer on probation when the crime was committed. (*Id.*) The probation officer noted the objection, but did not revise the PSR because Petitioner admitted in his guilty plea to participating in the conspiracy from 2007 to 2011. (*Id.*) Defense Counsel also states that she recommended Petitioner demonstrate his

acceptance of responsibility, and to explain his difficulties with addiction to alcohol and pain pills as exacerbated by his marital struggles under the sentencing factors described in 18 U.S.C. § 3553(a). (Doc. 70-1, ¶¶ 12(a)–(h), 13.) Petitioner's acceptance of responsibility resulted in an additional three point reduction. (Doc. 36, at 39.)

Second, Defense Counsel timely filed Defendant's Position on Sentencing with the Court on January 20, 2012. (Doc. 40.) In the Position on Sentencing, Defense Counsel again argued that Petitioner was not a leader. Defense Counsel directly asserted "[Petitioner] did not play any type of a leadership role in the conspiracy and was, by all accounts, unable to even operate a computer." (*Id.* at 13.) Defense Counsel further supported this argument by characterizing Petitioner as a father devoted to "providing for his family" (*id.* at 7) and by contacting Petitioner's family members, friends, and a former employer to obtain nine letters in support of Defendant, which she submitted to the Court. (Doc. 40-1, at 2–14; Doc. 40-2, at 2–3.) The Position on Sentencing also argued against the assessment of criminal history points for committing the offense on probation and re-asserted that Petitioner did not join the conspiracy until "the late summer of 2010." (Doc. 40, at 1.)

Third, Defense Counsel presented each of the arguments a third and final time during the oral arguments at the Sentencing Hearing, arguing that "[h]is direct involvement actually began in 2010" and that "he was not at all a person benefitting from this conspiracy or financing it in any manner." (Doc. 75, at 7:5–6, 11:17–19.) Defense Counsel again supported Petitioner's argument by bringing the Court's attention to the members of Petitioner's family and community who were in Court to support him by saying, "[t]here are several people here today, this entire back row really is people that have written letters." (*Id.* at 8:24–25.)

15

Relatedly, Petitioner asserts that Defense Counsel failed to provide the Court with his psychology report in time for consideration prior to sentencing, and that the report would have conclusively demonstrated he lacked the mental capacity to be a "leader." (Doc. 56, at 6.) Despite Petitioner's assertion, Defense Counsel did, in fact, file the report on January 25, 2012 prior to sentencing, and the Court verbally confirmed "I did read the record" during the hearing. (Doc. 75, at 12:16.) Because the evidence demonstrates that Defense Counsel addressed Petitioner's arguments, the Court finds that Petitioner received reasonable assistance during preparation for sentencing.

Turning to the *Strickland* prejudice prong, Petitioner has not provided evidence proving the outcome of his case was prejudiced by the alleged deficient performance of his counsel. It is clear that Defense Counsel presented all relevant arguments and objections to the Court. Despite Petitioners repeated assertion that the PSR's characterization of him as a "leader" was prejudicial (Doc. 56), Petitioner did not receive an increase for his role in the crime. (Doc. 38.) Importantly, Petitioner received a far less severe term of imprisonment than he could have. The PSR recommended a sentencing range of 108 to 135 months imprisonment and a three year term of supervised release, as required by U.S.S.G. §§ 5D1.1 and 5D1.2. (*Id.*) Instead, Petitioner received a significantly-below-guideline sentence of forty-eight months of imprisonment and three years of supervised release. (Doc. 45.) As such, this Court denies the Motion because Petitioner has failed to satisfy *Strickland* regarding Defense Counsel's representation during sentencing.

3. Appeal

Petitioner makes two arguments related to Defense Counsel's performance regarding appeal: (1) that she did not inform him that he was waiving his right to appeal; (2) that despite his insistence, Defense Counsel refused to file an appeal on his behalf. (Doc. 56, at 13.) Counsel only has a constitutionally-imposed duty to consult a defendant about an appeal in situations where the "rational defendant" would want to appeal or when a particular defendant makes it clear to counsel that they intend to appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). A highly relevant factor in determining if a "rational defendant" would want to appeal is whether the conviction follows a trial or a guilty plea. *Id.* When the defendant receives the sentence bargained for and where he waived some or all appeal rights, counsel has less reason to believe a defendant will appeal, and therefore, less of a duty to inform that defendant about an appeal. *See id.*

Here, as discussed above, Petitioner waived all rights to an appeal in the Plea Agreement (Doc. 32, ¶ 6.) Petitioner acknowledged he was waiving his appeal rights, and attested that Defense Counsel had discussed his rights with him on more than one occasion. First, he signed the Plea Agreement attestation that stated "I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal information." (Doc. 32, at 14.) Second, the Court asked Petitioner, "by signing this written plea agreement you're giving away your right to have three judges of the Court of Appeals review the sentence that [the Court] gives you as long as [the Court] do[esn't] exceed the maximum punishment. Do you understand that?" (Plea Hr'g Tr. at 11:14–19.) Petitioner responded "[y]es." (*Id.* at 11:19.) Further, Defense Counsel attests that she reviewed the Plea Agreement and the appeal waiver provision with Petitioner and believed he understood that he could not appeal. (Doc. 70-1, ¶ 19.) Because

17

Petitioner plainly waived his right to appeal, Defense Counsel had no reason to believe she was obligated to file even if Petitioner asked her to. Therefore, the Court denies the Motion because Defense Counsel's performance was reasonable.

**B. Unjust Imposition of Supervised Release**

The Court denies Petitioner's Motion for four independent reasons: (1) Petitioner waived all appeal rights in his Plea Agreement (Doc. 32, ¶6); (2) section 2255 claims may not be used as a vehicle to bring an appeal; (3) section 2255(f)(1) bars claims brought more than one year after final judgment; and (4) Petitioner's argument has no legal basis. A petitioner may not substitute a motion pursuant to § 2255 for the "usual and customary method" of the direct appeal to correct errors. *Allgood*, 48 F. Supp. 2d at 558. Once a defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." *Frady*, 456 U.S. at 166. For issues that could have been brought on appeal but were not, "the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1992). Petitioner argues that due to an irreconcilable conflict between 18 U.S.C § 3559 and 21 U.S.C. § 841, the imposition of three years of supervised release is unconstitutional and that such supervised release constitutes Double Jeopardy. (Doc. 56, at 14–22.) However, Petitioner does not show he had a valid "cause" for failing procedurally defaulting and the Court denies Petitioner's Motion.

First, a criminal defendant may waive his appellate rights so long as his waiver is knowing and voluntary. *Lemaster*, 403 F.3d at 220. Petitioner waived all appellate rights when the Court accepted his Plea Agreement, within which he attested that he:

18

knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement.

(Doc. 32, ¶ 6.) Petitioner also attested that he understood:

The maximum penalties for this offense are a term of twenty years of imprisonment, a fine of $1,000,000.00, full restitution, a $100.00 special assessment, and *at least three years of supervised release. The defendant understands that this supervised release term is in addition to any prison term the defendant may receive, and that a violation of a term of supervised release could result in the defendant being returned to prison for the full term of supervised release.*

(Doc. 32, ¶ 1) (emphasis added.) Lastly, he attested:

I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal information. Further, I fully understand all rights with respect to Title 18, United States Code, Section 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. *I understand this agreement and voluntarily agree to it.*

(*Id.* at 14) (emphasis added). Further, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established." *Lemaster*, 403 F.3d at 221–22. Petitioner acknowledged in open Court during the Rule 11 colloquy that he understood he was waiving his appeal rights (Plea Hr'g Tr. at 11); that he understood the maximum penalties would include "at least three years of supervised release" (*id.* at 8:2–3); and that he voluntarily decided for himself to enter into the Agreement. (*Id.* at 3:16–22.) As such, this Court concludes that Petitioner's statements regarding his understanding of, and agreement to, the knowing and willing waiver is conclusively established and he does not have grounds to appeal his sentence.

Second, attacks on sentencing decisions are properly brought on appeal, not in § 2255 claims. *See Mikalajunas*, 186 F.3d at 492. Therefore, because Petitioner could not bring an

19

appeal, he automatically procedurally defaulted this argument. After a procedural default, Petitioner may only attack his sentence in a § 2255 motion if he shows "cause and actual prejudice" or if he can demonstrate that a "miscarriage of justice" will result unless the Court entertains his Motion.[1] *Id.* at 492–93. To establish prejudice, Petitioner needs to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Petitioner has not put forward any arguments as to his "excuse" for procedurally defaulting, nor arguments about how he has been prejudiced. As a result, this Court must dismiss this argument.

Third, Petitioner's Motion before the Court must be dismissed because it is time barred. Section 2255 prescribes a one-year statute of limitations period from "when the judgment of conviction becomes final." When proposed claims in an amendment are barred by the statute of limitations, Federal Rule of Civil Procedure 15(c) provides for the relation back of amendments to the original pleading under certain circumstances. *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). Petitioner's amended grounds will relate back if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." Fed. R. Civ. P. 15(c)(2). In *Mayle v. Felix*, the Supreme Court rejected an application of the "conduct, transaction, or occurrence" standard to allow relation back of claims that related to "trial, conviction, or sentence." 545 U.S. 644, 664 (2005). The Supreme Court reasoned that if such a broad interpretation applied "virtually any new claim introduced in an amended petition [would] relate back [because] federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings

---

[1] The miscarriage of justice standard is concerned with claims of actual innocence. *See Embrey v. Hershberger*, 131 F.3d 739 (8th Cir. 1997).

20

anterior thereto." *Id.* Amended claims thus only relate back if the "original and amended petitions state claims that are tied to a common core of operative facts." *Id.*

This Court rendered final judgment in Petitioner's case on January 31, 2012. (Doc. 45.) Petitioner timely filed his original Motion to Vacate, Amend, or Set Aside Sentence on January 17, 2013. (Doc. 49.) The original Motion included only Petitioner's ineffective assistance of counsel arguments. Petitioner filed his Amended Motion on May 21, 2013, and at that time included his new, never before asserted claims regarding the unjust imposition of supervised release. (Doc. 56.) Petitioner did not raise any objections to supervised release prior to his amended motion even though, as discussed above, he was well informed that at least three years would be included in his sentence. (Doc. 32, ¶ 6; Plea Hr'g Tr. at 8:2–3.) The Court finds Petitioner's supervised release claims are not "tied to [the] common core of operative facts" relied on in his initial claims of ineffective assistance of counsel. *Felix*, 545 U.S. at 664. As such, the Court denies Petitioner's Motion.

Fourth, Procedural barriers aside, Petitioner's claim still fails. Petitioner argues that an irreconcilable conflict between 18 U.S.C. § 3559 and 21 U.S.C. § 841 violates the rule of lenity and the equal protection clause. (Doc. 56, at 14–17.) Petitioner argues that because Title 18 violations do not *require* mandatory supervised release under § 3559 the application of mandatory sentences to other violations, such as 21 U.S.C. § 3551 under which Petitioner was convicted, should be barred. (*Id.*) Petitioner also argues that 18 U.S.C. § 3551 authorizes only probation, fines, or imprisonment but not supervised release. (Doc. 56, at 24.)

Rather than being in conflict, however, these statutes may be applied harmoniously. Title 18 provides that:

> The court, in imposing a sentence to a term of imprisonment for a felony or a
> misdemeanor *may include as a part of the sentence a requirement that the*

21

> *defendant be placed on a term of supervised release after imprisonment*, except
> that the court shall include as a part of the sentence a requirement that the
> defendant be placed on a term of supervised release if such a term is required by
> statute

18 U.S.C. § 3583(a) (emphasis added). Title 21 U.S.C. § 841(b)(1)(C) requires a term of

supervised release of at least three years for schedule I or II controlled substance violations and

is written so that it can comply with Title 18. It states "[n]otwithstanding section 3583 of Title

18, any sentence imposing a term of imprisonment under this paragraph shall . . . impose a term

of supervised release of at least three years in addition to such term of imprisonment." *Id.* Title

21 U.S.C. § 3583 limits supervised release for a Class C or Class D felony to no more than three

years. Three years of supervised release is proper under U.S.S.G. §§ 5D1.1 and 5D1.2.

 Petitioner also argues that supervised release acts as the imposition of a second sentence

to a single crime, constituting Double Jeopardy. (Doc. 56, at 17.) His characterization of

supervised release is incorrect. Rather, a "term of supervised release, the revocation of that term,

and any additional term of imprisonment imposed for violating the terms of the supervised

release are all part of the original sentence." *United States v. Evans*, 159 F.3d 908, 913 (4th Cir.

1998). Therefore, supervised release is not a second sentence, but rather is a part of the original

terms as one singular sentence.

 For the above reasons, the Court denies Petitioner's Motion.

### C. Evidentiary Hearing

 In coming to the above conclusions, the Court has chosen not to grant an evidentiary

hearing. The Fourth Circuit has held that "in the absence of extraordinary circumstances,

allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made

during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently

frivolous or false.'"*Ashlock*, 2013 WL 5275908, at *4–5. Thus, "a district court should, without

22

holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 222.   Petitioner argues that an evidentiary hearing is required because there are issues of fact and because a credibility determination is necessary in order to resolve the issues. (Doc. 56, at 14.) However, as discussed at length above, Petitioner has failed to make any argument that is not "conclusively refuted as to the alleged facts by the files and the records of the case." *Moreno-Morales*, 334 F.3d at 145. Petitioner's essential claims—that he did not want to plead guilty via Plea Agreement and that he did so only because he had ineffective assistance of counsel—are directly refuted by Petitioner's own solemn declarations in open court. Therefore, the Court finds that an evidentiary hearing is unnecessary because Petitioner's allegations are directly refuted by both the record and his previous sworn statements.

## IV.    CONCLUSION

For the reasons stated above, the Court denies Petitioner's § 2255 Motion to Vacate, Set Aside or Correct Sentence. (Doc. 56.) First, the Court finds that Petitioner's claims of ineffective assistance of counsel lack merit because Petitioner has failed to demonstrate (1) that Defense Counsel's performance fell below an objective standard of reasonableness and (2) that Petitioner was prejudiced by such performance. Second, Petitioner's claim regarding supervised release is both procedurally barred and without legal support.  Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence (Doc. 56) is **DENIED.** As a result, Petitioner's Motion for Discovery of Production of Documents (Doc. 52) and Petitioner's Motion to Waive Some of the Documents Requested in their Discovery (Doc. 53) are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Entered this ____ day of August, 2014.

Alexandria, Virginia

8 / / 2014

_____/s/_____
Gerald Bruce Lee
United States District Judge